IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENWOOD DIVISION

| | |
|---|---|
| George F. Morgan, <br> Plaintiff, <br> vs. <br> Self Regional Healthcare, d/b/a <br> Self Memorial Hospital, <br> Defendant. | Civil Action No. 8:10-382-JMC-KFM <br><br> **ORDER AND** <br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's partial motion to dismiss and to strike the plaintiff's jury demand and the plaintiff's motion to amend his complaint. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

## **FACTS PRESENTED**

On October 15, 2002, the plaintiff began working at defendant Self Regional Healthcare as a staff nurse in the operating room (compl. ¶ 2). During his employment, he had access to Self Regional's Policy and Procedure Manual, which contained, *inter alia*, policies entitled: (1) Employee Accident Report Policy (the "Accident Policy"), and (2) Disciplinary Procedure and Rules of Conduct (the "Disciplinary Policy") (compl. ¶¶ 3, 4; def. m. to dismiss, ex. 1, 2).

In 2005, the plaintiff transferred into a position that focused on working with the operating room's computer systems, rather than directly assisting physicians in the operating theater (compl. ¶ 5). On December 2, 2008, the plaintiff filed a workers'

compensation claim, alleging that he was having allergic reactions to the air in his office (compl. ¶¶ 6-8). The claim was denied by the South Carolina Workers' Compensation Commission on April 8, 2009 (compl. ¶ 20).

On January 15, 2009, the plaintiff "approached" three co-workers about the deficiencies he perceived in their "in-service" presentation that day. Specifically, the plaintiff felt the nurses' instructions on the use of a piece of equipment called a "slush machine" in an operating room was incorrect. The plaintiff claims the nurses shouted at him in an aggressive and loud manner that their presentation was correct (compl. ¶ 12). That same day, the plaintiff contacted the Association of Perioperative Nurses ("AORN") to seek advice about the issue. Later that day, the plaintiff went to the office of Debbie Strickland, the director of the operating room, and gave her the advisory opinion from AORN. Also, when he saw one of the co-workers who had given the presentation, he gave her a copy of the opinion to circulate to the others (compl. ¶¶ 13-14).

On January 28, 2009, the plaintiff was told he was being suspended for complaints of rude behavior (compl. ¶ 16). Two days later, the plaintiff was terminated for "conduct by an employee deemed by the Hospital to be detrimental or contrary to the interests of the Hospital or its employees, physicians or patients" (compl. ¶ 17).

On January 19, 2010, the plaintiff served his state court summons and complaint on the defendant. The complaint alleged three contract-based claims: breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of contract accompanied by a fraudulent act. He also alleged one claim for workers' compensation retaliation (S.C. Code Ann. § 41-1-180). In the complaint, the plaintiff alleges that the Employee Handbook "specifically provides employee complaint, disciplinary, and termination procedures detailing the length of time an employee complaint remains in his/her file and the obligations a supervisor must follow for Group Two Violations" (the "Disciplinary Policy") (compl. ¶ 33). The complaint further states that the

Employee Handbook "mandates that the employee report any on-the-job injury to his supervisors" (the "Accident Policy") (compl. ¶ 34). The plaintiff alleges that "[t]hese said policies and procedures constitute a contract of employment which served to alter any at-will employment relationship that may have existed between the parties" (compl. ¶ 35).

On February 17, 2010, the defendant removed the case to this court, and on March 10, 2010, it filed the partial motion to dismiss now before the court. In the partial motion to dismiss, the defendant argues that neither the Accident Policy nor the Disciplinary Policy altered the plaintiff's status as an at-will employee. On March 16, 2010, the plaintiff filed his opposition to the motion, and on March 23, 2010, the defendant filed its reply.

On April 14, 2010, the court entered a scheduling order. The order provides that motions to amend the pleadings shall be filed no later than June 14, 2010. On May 18, 2010, the defendant produced in discovery a copy of its Corporate Compliance and Integrity Code of Conduct (the "Compliance Code").[1] On August 13, 2010, the defendant took the plaintiff's deposition. When asked which policies or procedures his termination violated, the plaintiff named the Compliance Code, a document that was not mentioned in the complaint. The Compliance Code states that its purpose is to set forth recommended practices "to help guarantee that [Self Regional's] services [to patients] are provided in compliance with all policies, laws, and regulations" governing patient care (def. m. to dismiss, ex. C at SRH-000636). The Compliance Code provides that employees should report violations of the law committed in the course of patient care to Self Regional without fear of reprisal, and it provides a procedure for doing so (*id.* at SRH-000644 to 647). When asked how his

---

[1] The plaintiff contends these responses were a month late (pl. m. to amend 3). However, the defendant points out that before the parties held their Rule 26(f) conference, the plaintiff improperly served discovery. *See* Fed. R. Civ. P. 26(d)(1) ("A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . ."). The defendant offered to consider the discovery served as of the date of parties' Rule 26(f) conference, and the plaintiff did not respond. Accordingly, when the parties held their Rule 26(f) conference on April 15, 2010, the defendant considered the discovery requests served as of that date—the earliest date on which discovery could be served—and timely served its responses on May 18, 2010 (def. resp. m. to amend 3-4).

3

termination violated the Compliance Code, the plaintiff claimed that he was terminated for reporting that the procedure for using a piece of operating room equipment was improper and could affect patient care (pl. dep. 125-26, 146, 177). The plaintiff further testified that he was aware of and relied upon the Compliance Code during his employment (*id.* 137, 145).

On September 7, 2010, the plaintiff filed a "supplemental memorandum" in opposition to the defendant's motion to dismiss. The plaintiff argued that in the process of discovery he had received additional corporate documents, in particular the Compliance Code, and this document "create[d] an additional basis for these [contract] causes of action" (pl. supp. memo. 2). The defendant responded to the plaintiff's supplemental memorandum arguing that the memorandum should be stricken as a late and unauthorized successive filing. The defendant further argued that, even if the memorandum was considered, the partial motion to dismiss should be granted. Also, the defendant noted that the plaintiff's memorandum set forth an entirely new and unpleaded cause of action based upon the Compliance Code.

On September 27, 2010, the plaintiff filed a motion to amend his complaint to allege that he was terminated in retaliation for reporting concerns with the use of a piece of operating room equipment. He claims that this violated the Compliance Code. The plaintiff argues in the motion to amend that the amendment merely "clarifies" his original contract allegations. The defendant opposes the motion to amend, arguing that the motion is untimely and that the plaintiff has failed to show good cause for the late filing. The defendant further argues that any such amendment is futile as the Compliance Code does not alter the plaintiff's status as an at-will employee.

**APPLICABLE LAW AND ANALYSIS**

In considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must determine whether the complaint sets forth sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Even though a complaint's allegations are viewed in a light most favorable to the plaintiff, the claim presented must be "plausible." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009) (citing *Twombly,* 550 U.S. at 556). Therefore, for a complaint to survive a motion to dismiss, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir. 2002)).

The defendant has moved to dismiss the plaintiff's contract claims (the second, third, and fourth causes of action). As set forth above, the plaintiff alleges in his complaint that the defendant's Disciplinary and Accident Policies create a contract of employment that altered his at-will status (compl. ¶¶ 33-35). The defendant argues that neither the Accident Policy nor the Disciplinary Policy alters the plaintiff's at-will status because neither one contains the kind of mandatory language that would create a reasonable expectation of continued employment. Thus, the defendant argues that the plaintiff's contract claims fail as a matter of law. This court agrees.

Under South Carolina law, "there is a presumption of at-will employment," meaning that either party can sever the employment relationship at any time for any reason or no reason at all. *Prescott v. Farmer's Tel. Co-op., Inc.*, 516 S.E.2d 923, 927 n.8 (S.C. 1999). An employer, however, can alter an employee's at-will status by promulgating policies that are "drafted in sufficiently mandatory terms to give rise to a reasonable

5

expectation on the part of the employee of continued employment." *Toomer v. S.C. Bank & Trust*, No. 5:06-2337, 2008 WL 725792, at *13 (D.S.C. Mar. 17, 2008). Without mandatory language that gives rise to such an expectation, an employer's policies "do[] not contain promises enforceable in contract." *Grant v. Mt. Vernon Mills, Inc.*, 634 S.E.2d 15, 22 (S.C. Ct. App. 2006).

The Accident Policy provides as its "standard" the following: "A Supervisor's Report of Employee Occurrence (SREO) will be completed for any job related event which causes or can cause injury or illness to an employee." The policy further states: "The accident must be reported immediately to his/her supervisor. The completed report must be in Human Resources within 24 hours." The policy further sets forth the procedure to be followed in case of an accident (def. m. to dismiss, ex. 1).

The policy contains no promissory language. For a workplace policy to create a contract for employment, the policy must "promis[e] specific treatment in specific situations." *Hessenthaler v. Tri-County Sister Help, Inc.*, 616 S.E.2d 694, 698 (S.C. 2005). Further, the South Carolina Court of Appeals has noted that an employer's policies only alter the at-will relationship when they "set[] out mandatory, progressive discipline procedures." *Grant*, 634 S.E.2d at 20. South Carolina courts have consistently rejected contract claims based on policies that do not address employee discipline. *See, e.g., Eady v. Veolia Transp. Servs., Inc.*, 609 F. Supp.2d 540, 560 (D.S.C. 2009) (holding that non-discrimination policy did not alter at-will relationship); *Acker v. Greenville Surgery Ctr., Ltd. P'ship*, No. 6:06-3538-HMH, 2008 WL 163060, at *5 (D.S.C. Jan. 15, 2008) (holding that military leave policy did not alter at-will relationship); *Hessenthaler*, 616 S.E.2d at 698 (holding that non-discrimination policy did not alter at-will relationship); *Grooms v. Mobay Chem. Corp.*, 861 F. Supp. 497, 505-506 (D.S.C. 1991) (holding that reduction-in-force policy did not alter at-will status). As argued by the defendant, this makes sense because mandatory progressive discipline policies, unlike other policies, can give employees the

6

impression that certain steps must be taken before they can be discharged for cause. *See Hessenthaler*, 616 S.E.2d at 698 (noting that mandatory discipline policies "provide that an employee may be fired only after certain steps are taken").

Furthermore, the Accident Policy does not impose any employer-specific obligations on Self Regional employees; rather, it merely advises them of what South Carolina law requires them to do in the event that they are involved in a workplace accident. Under South Carolina Code Annotated Section 42-15-20(A), "[e]very injured employee or his representative immediately shall on the occurrence of an accident, or as soon thereafter as practicable, give or cause to be given to the employer a notice of the accident . . . ." Failing to give proper notice can result in the forfeiture of workers' compensation benefits. S.C. Code Ann. § 42-15-20(A)-(C). It is well-settled that employers may advise employees of the law without altering the at-will relationship. *See Hessenthaler*, 616 S.E.2d at 698 (holding that non-discrimination policy did not alter at-will relationship); *Acker*, 2008 WL 163060, at *5 (noting with regard to military leave policy that "a general statement of policy to abide by federal law . . . cannot reasonably be construed as a deviation from at-will employment").

The plaintiff makes the argument that the Accident Policy alters his at-will employment status because it provides that the supervisor "will investigate the accident thoroughly"; the "security and safety Director will analyze all the data and take action as necessary"; and the "report will be sent to Human Resources" (pl. resp. m.. to dismiss 5-6). The argument is meritless. Here, the plaintiff claims he was *discharged* in violation of a contract of employment, not that the defendant had or breached any duty to investigate or otherwise respond to his alleged accident. As discussed above, nothing in the Accident Policy purports to promise employees any particular disciplinary or termination procedure.

The plaintiff also alleges in his complaint that the defendant's Disciplinary Policy created a contract of employment that altered his at-will status. The Disciplinary

7

Policy divides disciplinary problems into two categories, Group One (more serious) and Group Two (less serious), and it expressly states that employees may be subject to any form of discipline, including termination, for either type of performance problem. Specifically, it provides that "the employee may be terminated" for Group One violations. Likewise, for Group Two violations, employees "[u]nder normal circumstances" receive written counseling for first and second violations and are discharged for a third violation. However, the policy states that violation of Group Two standards "may result in disciplinary action, including dismissal, depending on the circumstances." In addition, disciplinary warnings are destroyed after one year "absent unusual circumstances" and "if no further disciplinary action is necessary" (def. m. to dismiss, ex. 2).

As argued by the defendant, by using the words "may" and "depending," and the phrases "under normal circumstances" and "absent unusual circumstances," the defendant couched its policy in the same permissive, non-mandatory language that South Carolina courts have consistently held does not create an employment contract. For example, in *Horton v. Darby Elec. Co.*, 599 S.E.2d 456, 461 & n.7 (S.C. 2004), the South Carolina Supreme Court emphasized that using the word "may" in a disciplinary policy prevents it from creating a contract for employment. *See also Watkins v. Disabilities Bd. of Chas. County*, 444 F. Supp.2d 510, 516 & n.3 (D.S.C. 2006) (holding that disciplinary policy that used the word "may" and expressly stated that the form of discipline "depends upon a number of factors" did not create contract of employment as a matter of law). Similarly, in *Grant v. Mt. Vernon Mills, Inc.*, 634 S.E.2d 15 (S.C. Ct. App. 2006), the South Carolina Court of Appeals held that the phrase, "[w]arnings are *normally* given," which is virtually the same as the defendant's "[u]nder normal circumstances" and "absent unusual circumstances" language, rendered a disciplinary policy permissive, not mandatory, and incapable of altering an employee's at-will status. *Id.* at 22 (emphasis in original). Finally, in *Taylor v. Cummins Atl., Inc.*, No. 94-1596, 1995 WL 88957, at *2 (4th Cir. Mar. 6, 1995),

the Fourth Circuit Court of Appeals, in holding that a disciplinary policy did not alter the at-will relationship as a matter law, emphasized the use of the words "*may*" and "*depending*," both of which are used in the defendant's Disciplinary Policy. *Id.* (emphasis in original).

The plaintiff argues in his response in opposition to the motion to dismiss that the provision of the Disciplinary Policy stating that supervisors "should thoroughly investigate the situation and determine the facts" before administering discipline "comprises the mandatory language needed to alter the at-will status" (pl. resp. m. to dismiss 5). However, the South Carolina Court of Appeals has held that general statements of how supervisors "should" respond to employee misconduct do not alter an employee's at-will status. *Grant*, 634 S.E.2d at 18, 22. Based upon the foregoing, this court finds that the policies relied upon by the plaintiff in his complaint did not alter his at-will employee status.

The plaintiff contends that his contract claims are not premised only on the two policies specifically referenced in his complaint but on the defendant's policies and procedures as a whole (pl. resp. m. to dismiss 3). Specifically, the plaintiff points to two allegations in the complaint: (1) "Plaintiff complied with his obligations under the Employee Manual; nevertheless, Defendants [sic] failed to comply with its obligations and breached its contract with Plaintiff"; and (2) "Plaintiff and Defendants [sic] entered into a contract of employment which served to alter any at-will employment relationship that may have existed between the parties" (pl. resp. m. to dismiss 3; compl. ¶¶ 38, 41). However, such conclusory allegations without specification of the terms of the alleged contract or what the defendant did to breach it do not suffice under *Twombly* and *Iqbal.* Wherefore, based upon the foregoing, the defendant's partial motion to dismiss should be granted.

As discussed above, the plaintiff filed a supplemental memorandum in opposition to the motion to dismiss arguing that the defendant's Compliance Code "create[d] an additional basis for these [contract] causes of action" (pl. supp. memo. 2).

9

The defendant responded arguing that the plaintiff was attempting to circumvent the scheduling order and the Federal Rules by setting forth an entirely new and unpleaded causes of action without amending in complaint. This court agrees with the defendant's position. The plaintiff may not rely on a new, unpleaded theory to avoid dismissal of his complaint, which does not even mention the Compliance Code. Perhaps in recognition of this, the plaintiff has filed a motion to amend his complaint. However, the motion, filed on September 27, 2010, is more than three months late.

Pursuant to Rule 16(b), a showing of good cause is necessary to modify the scheduling order. Fed.R.Civ.P.16(b). In *Dilmar Oil Co., Inc., v. Federated Mut. Ins. Co.,* 986 F.Supp. 959, 980 (D.S.C. 1997), the Honorable Cameron McGowan Currie, United States District Judge, noted, "Once a scheduling order's deadline for amendment of the pleadings has passed, a moving party first must satisfy the good cause standard of Rule 16(b). If the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under Rule 15(a)." *Id*. (citations omitted). "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Id*. (citations omitted). "'[G]ood cause' means that scheduling deadlines cannot be met despite a party's diligent efforts. . . . In other words, this court may 'modify the schedule on a showing of good cause if [the deadline] cannot be met despite the diligence of the party seeking the extension.'" *Id*. (internal citations omitted). *See also Montgomery v. Anne Arundel County*, Nos. 05-1267, 05-1314, 2006 WL 1194308, at *5 (4th Cir. 2006) ("Rule 16(b)'s good cause standard focuses on the timeliness of the amendment and the reasons for its tardy submission; the primary consideration is the diligence of the moving party."). Under Rule 15(a), after responsive pleadings have been served, a party may amend a pleading only by leave of court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed.R.Civ.P. 15(a). The decision to

10

grant leave to amend a complaint is committed to the court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

> The plaintiff argues he has met the good cause standard:
>
> Here, [P]laintiff's proposed amendment is minor. Plaintiff seeks to include clarification as to what documents all parties deem to comprise Self's Employee Handbook. This amendment should not prejudice or surprise the Defendant. No additional time would be necessary, because the document has been produced and discussed in testimony. The causes of action have not changed, and Defendant has yet to file its Answer to the original Complaint. In addition, the Scheduling Order was recently extended an additional thirty days because email correspondence among specifically named parties which was requested from Self in March of 2010 has yet to be produced. Therefore, Plaintiff has shown good cause for leave to amend.

(Pl. reply m. to amend 1-2).

As set forth above, the primary consideration in determining whether the good cause standard for modification of the scheduling order is met is the diligence of the moving party. Here, the defendant produced the Compliance Code to the plaintiff on May 18, 2010, nearly a month before the June 14, 2010, deadline for amendment of pleadings. While the plaintiff states in the last line of his motion to amend that "the late filing is due, in part, to defendant's actions throughout this discovery process" (pl. m. to amend 5), the plaintiff explains neither what those actions are nor or how they prevented him from amending his complaint in a timely fashion. Elsewhere in his motion to amend, the plaintiff complains that there has been delay in scheduling the depositions of a few of the defendant's witnesses because of the defendant's "scheduling problems." However, the plaintiff does not explain how this discovery delay is relevant to the filing of the motion to amend. Further, as pointed out by the defendant, the plaintiff demonstrated he did not need these depositions to amend his complaint by filing the instant motion *before* taking the additional depositions. The plaintiff also complains that the defendant produced approximately 4,000 pages of documents in response to his discovery requests, but he provides no explanation as to why

11

this impacted his filing of the motion to amend his complaint (pl. m. to amend 3). Lastly, the plaintiff complains that the defendant's discovery responses containing the Compliance Code were "a month late" (pl. m. to amend 3). As addressed above, however, the defendant has shown that the plaintiff's discovery requests were improperly served before the parties' Rule 26(f) conference. Accordingly, the defendant considered them served as of the date of the conference, and the discovery responses were thus timely. Furthermore, it is undisputed that the discovery responses were served almost a month before the deadline for amending pleadings. The plaintiff admits in his motion that he did not review the documents produced in May, which included the Compliance Code, until the day before his deposition on August 13, 2010 (pl. m. to amend 3). It was another six weeks before the plaintiff filed his motion to amend on September 27, 2010. The plaintiff has failed to show that the scheduling deadlines could not be met despite his diligent efforts. Accordingly, the good cause standard has not been met, and the motion to amend is denied.

Should the district court accept this court's recommendation and grant the defendant's motion to dismiss the plaintiff's contract claims, and as this court has denied the plaintiff's motion to amend his complaint, the only remaining claim is one for retaliatory discharge under South Carolina Code Annotated Section 41-1-80. The statute provides: "No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law . . ., or has testified or is about to testify in any such proceeding." S.C. Code Ann. § 41-1-80. The statue permits only two remedies: (1) reinstatement and (2) back pay. *Id.* The defendant argues that the remedies are equitable in nature, and thus no jury right attaches to the plaintiff's remaining claim. *See Wallace v. Milliken & Co.*, 406 S.E.2d 358, 359 (S.C. 1991) (holding that an action pursuant to § 41-1-80 is equitable in nature as reinstatement is equitable relief, and payment of back wages is "merely an integral part of the remedy" and is itself an equitable remedy); *see also Hinton v. Designer*

*Ensembles, Inc.,* 540 S.E.2d 94, 96 (S.C. 2000) (A retaliatory discharge claim is an equity action tried without a jury.") (citing *Johnson v. J.P. Stevens & Co., Inc.*, 417 S.E.2d 527, 529 (S.C. 1992)). The plaintiff's argument that the General Assembly's use of the phrase "civil action" in the statute demonstrates that it intended to create an action at law rather than at equity is unavailing and ignores the case law holding otherwise. Based upon the foregoing, the defendant's motion to strike the plaintiff's jury demand should be granted.

## CONCLUSION

Wherefore, based upon the foregoing,

IT IS ORDERED that the plaintiff's motion to amend (doc. 35) is denied. Further,

IT IS RECOMMENDED that the defendant's partial motion to dismiss and motion to strike jury demand (doc. 9) be granted.

                                                  s/Kevin F. McDonald
                                                  United States Magistrate Judge

November 1, 2010

Greenville, South Carolina